

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 23, 2024

**BY ECF**
The Honorable Mary Kay Vyskocil
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

Re: **United States v. Yi Zheng**, 23 Cr. 546 (MKV)

Dear Judge Vyskocil:

The Government respectfully submits this letter in advance of the sentencing in this matter for defendant Yi Zheng (the "defendant"), which is scheduled for January 30, 2024. On October 25, 2023, the defendant pled guilty pursuant to a plea agreement to one count of conspiracy to commit bank fraud, in violation of Title 18, United States Code, Sections 371. Because of the seriousness of the offense and the need to deter future criminal conduct, the Government recommends a sentence within the Guidelines range of 24 to 30 months' imprisonment.

**A. Overview**

  i. The Offense Conduct

The defendant was a participant in a "check kiting" scheme that, from 2015 through 2019, defrauded major banks out of millions of dollars. Using fake identifications, the defendant and his co-conspirators would open bank accounts that had little to no money in them (the "Feeder Accounts"). They would then write bad checks from the Feeder Accounts and deposit them in other accounts under their control (the "Payoff Accounts"). The defendant and his co-conspirator took advantage of the fact that, when checks are deposited into accounts, banks typically make a portion of the funds from the checks—sometimes called "float"—immediately available to accountholders. After bad checks were deposited into Payoff Accounts, the defendant and his co-conspirators would withdraw the float from the Payoff Accounts.

Using false identities, the defendant either deposited bad checks, withdrew float from, or otherwise accessed at least 73 different Payoff Accounts that had, in total, $573,225.40 in losses.[1]

---

[1] In preparing this submission, the Government uncovered an error in the forfeiture and restitution amounts listed in the plea agreement. The plea agreement listed those amounts as $577,676.64.

Between March 5, 2019, and March 7, 2019, for example, the defendant deposited almost $79,156 worth of bad checks at a bank branches in New Jersey and Flushing. The defendant was hardly acting as a lone wolf—between January 2017 and August 2018, the defendant was in frequent contact with multiple co-conspirators. He was in contact with one co-conspirator approximately 2,484 times, and with a second co-conspirator approximately 380 times.

    ii. Procedural History

The defendant and his co-conspirators were arrested and charged in a Complaint with one count of conspiracy to commit bank fraud, in violation of Title 18, United States Code, Section 1344, and one count of conspiracy to commit access device fraud, in violation of Title 18, United States Code, Section 1029(b)(2). After being presented on the charges in the Complaint, the defendant was released on bail.

On October 25, 2023, the defendant pled guilty to an Information charging him with one count of conspiracy to commit bank fraud, in violation of Title 18, United States Code, Section 371, pursuant to a plea agreement (the "Plea Agreement"). The parties stipulated to an offense level of 19 and a Criminal History Category of I, resulting in a Stipulated Guidelines Range of 30 to 37 months' imprisonment. The Probation Office calculates a Guidelines range of 24 to 30 months' imprisonment, in light of the November 2023 4C1.1 Amendment to the Guidelines, which applies a two-level offense level reduction for zero-point offenders. (Presentence Investigation Report ("PSR") ¶ 96).

**B. Discussion**

    i. Applicable Law

As the Court is well aware, the Guidelines continue to provide guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 128 S. Ct. 586, 594 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 596. After that calculation, the Court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law. *Id.* at 50 & n.6. To the extent the Court imposes a sentence outside the Guidelines range, it must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*) (quoting *Gall*, 552 U.S. at 46).

---

The Government now believes that the defendant is responsible for a loss of $573,225.40 and will be seeking forfeiture and restitution in that amount.

    ii. <u>The Defendant's Conduct and the Need for Deterrence Warrant a Substantial Period of Imprisonment</u>

The Court should impose a sentence within the Guidelines range of 24 to 30 months' imprisonment. Such a sentence is necessary given the seriousness of the offense and the need to promote respect for the law and afford adequate deterrence to criminal conduct.

The defendant's conduct was extremely serious—he personally defrauded three banks out of more than $573,225.40 and was a co-conspirator in a larger scheme that defrauded banks out of millions more. This was not a one-off fraud. The defendant deposited bad checks in or withdrew fraudulent funds from at least 73 different bank accounts. He could have stopped at any time. He did not. Instead, he continued on with the scheme—as demonstrated by the thousands of calls he had with his co-conspirators. The defendant's conduct alone calls for a meaningful prison sentence.

But here there is the added concern of general deterrence—check fraud is pervasive and causes significant losses to banks across the country. Banks in turn recoup those losses by raising costs for all customers. Put simply, there is a great societal interest in curbing check fraud, including check kiting. A meaningful sentence of imprisonment will send a message to members of the defendant's community and the public writ large that the courts will not tolerate bank fraud.

Two co-defendants in the scheme have already been sentenced and several others are awaiting sentencing. Kejin Zhang, whose Guidelines range was 12 to 18 months' imprisonment, was sentenced to 6 months' imprisonment by Judge Cronan. Choabin Zheng, whose Guidelines range was 8 to 14 months' imprisonment, was sentenced to probation and 8 months of home confinement by Judge Ramos. The Government submits that the defendant's culpability is greater than Zhang and Zheng's, and that the circumstances surrounding Zheng's sentence counseled in favor of punishment less severe than what is warranted here. Among other things, Zheng paid restitution in full in advance of sentencing. The defendant has yet to pay any restitution to his victims.

**C. Conclusion**

For the reasons set forth above, a sentence withing the Guidelines range of 24 to 30 months' imprisonment is warranted.

                              Respectfully submitted,

                              DAMIAN WILLIAMS
                              United States Attorney for the
                              Southern District of New York

                by:  /s/ Adam Sowlati
                      Adam Sowlati
                      Jackie Delligatti
                      Assistant United States Attorney
                      (212) 637-2438/2559

Cc: Counsel of record, by ECF